IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DONALD EUELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 3:13cv727–HEH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action challenging the Social Security Administration's ("SSA") denial of Disability Insurance Benefits ("DIB") to Plaintiff Donald Euell ("Plaintiff"). The matter is before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge (ECF No. 14) as to the parties' cross-motions for summary judgment (ECF Nos. 11, 13), filed pursuant to 42 U.S.C. § 405(g). The R&R recommends that this Court affirm the SSA's decision. Plaintiff filed objections to the R&R (ECF No. 15), and the SSA responded (ECF No. 16). The Court dispenses with oral argument because it would not materially aid the decisional process.

For the reasons set forth herein, Plaintiff's objections will be overruled and the R&R will be adopted as the opinion of the Court. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 13) will be granted; Plaintiff's Motion for Summary Judgment (ECF No. 11) will be denied; and the decision of the SSA will be affirmed.

# I. BACKGROUND[1]

Plaintiff is a 67-year-old high school graduate. (R. at 179, 183.) He was employed for thirty-five (35) years as a school bus driver and for thirteen (13) of those years he also worked a second job as a correctional officer. (R. at 184.) Plaintiff has developed insulin-dependent diabetes with diabetic retinopathy and glaucoma resulting in him being unable to continue working as a school bus driver. (R. at 24.)

## A. Plaintiff's Medical History

Plaintiff has a history of diabetes which has in turn resulted in vision problems. With insulin medication and monitoring, Plaintiff has been able to maintain stable blood sugar levels. (R. at 25.) However, he has continued to have degraded vision in the right eye. Although his visual acuity is still fairly good, he has a significant reduction in his field of vision. (R. at 446.) In June 2012, Plaintiff's ophthalmologist and treating physician, Dr. Arash Mansouri, noted that the field of vision in Plaintiff's right eye had narrowed to twenty degrees making him "pretty much a one-eyed man." (*Id.*)

Due to his vision problems, Dr. Mansouri concluded that Plaintiff is not able to perform work requiring "[v]ery, very fine/close inspection." (R. at 447.) Dr. Mansouri further concluded that Plaintiff should not work at heights or have exposure to dangerous

---

[1] The following facts are drawn from the administrative record, which has been filed under seal pursuant to E.D. Va. Local R. 5 and 7(C). In accordance with these Rules, this Court will endeavor to exclude any personal identifiers from its discussion, and will incorporate Plaintiff's medical information only to the extent necessary for proper analysis. The Court will reference the record using the following citation formation: (R. at [page number].).

or moving machinery. (*Id.*) Dr. Mansouri also specifically stated that "driving a school bus [is] completely out of the question." (R. at 446.)

## B. Procedural History

Plaintiff applied for DIB on May 14, 2010, alleging disability due to his insulin-dependent diabetes and diabetic retinopathy/glaucoma, with a December 11, 2009 onset date. (R. at 157.) The SSA denied his claim both initially on December 15, 2010, (R. at 88–90), and upon reconsideration on May 24, 2011 (R. at 93–95). On June 26, 2012, Plaintiff, represented by counsel, presented his claim to the ALJ, (R. at 35), who determined on June 29, 2012 that Plaintiff was not entitled to DIB. (R. at 21–28.) Thereafter, on August 30, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. at 1.)

On October 25, 2013, Plaintiff filed a Complaint in this Court, contesting the SSA's decision under 42 U.S.C. § 405(g). Plaintiff alleges that the ALJ applied the incorrect legal standard by using the wrong Grid Rule[2] regarding Plaintiff's nonexertional limitations. (Compl. ¶ 6.) Both parties filed motions for summary judgment, which were referred to the Magistrate Judge for an R&R. Upon review, the Magistrate Judge concluded that the ALJ did not err in his application of Grid Rule 203.07 and that substantial evidence supported the ALJ's finding that Plaintiff could perform work that existed in the national economy.

---

[2] In order to determine if an individual is disabled, the SSA's regulations establish Grid Rules "that take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." *Grant v. Schweiker*, 699 F.2d 189, 191–92 (4th Cir. 1983).

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition. *Id.* When reviewing the SSA's final decision regarding disability benefits, this Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653. In other words, substantial evidence requires more than a mere scintilla, but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). If the SSA's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## III. ANALYSIS

Plaintiff raises a single objection to the R&R. Therefore, the Court will cabin its analysis to this issue. *See United States v. George*, 971 F.2d 1113, 1117 (4th Cir. 1992) ("[T]he court . . . shall make a *de novo* determination of *those portions* of the report or *specified* proposed findings or recommendations to which objection is made.") (emphasis added) (citation and quotation marks omitted). Plaintiff objects, arguing that the ALJ,

and consequently the Magistrate Judge, misapplied the law to the facts of Plaintiff's case. (Pl.'s Obj. 2.) In fact, Plaintiff concedes that "the facts in this case are not in issue at all." (*Id.* at 1.) He argues that the ALJ used the incorrect Grid Rule in making his determination that Plaintiff is not disabled. Specifically, Plaintiff contends that the ALJ applied Grid Rule 203.07 when he should have applied Grid Rule 202.06. (*Id.* at 6.) Because the Court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's findings, and those findings were reached through an application of the correct legal standard, the SSA's decision must stand and the Court will adopt the R&R.

The ALJ's "[d]etermination of eligibility for Social Security benefits involves a five-step inquiry." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *see also Johnson*, 434 F.3d at 653 n.1. At the first step, the claimant must demonstrate that he is not engaged in substantial gainful activity ("SGA") at the time of application. 20 C.F.R. § 404.1520(b). Second, the claimant must prove that he has a "severe impairment ... or combination of impairments which significantly limit[ ][his] physical or mental ability to do basic work activities ..." § 404.1520(c). At the third step, if the impairment matches or equals one of the impairments listed in the Act, and the impairment lasts—or is expected to last—for at least twelve (12) months, then it constitutes a qualifying impairment and the analysis ends. § 404.1520(d); *see* 20 C.F.R. Part 404, Subpart P, App. 1 (listing impairments). If, however, the impairment does not conform to one of those listed, then in step four, the ALJ must compare the claimant's residual functional capacity ("RFC") with the "physical and mental demands of [the claimant's] past relevant

5

work." § 404.1520(f). If such work can be performed, then benefits will be denied. *Id.* Finally, if the claimant cannot perform past work, then the burden shifts to the Commissioner to show that the claimant is capable of performing other work that is available in significant numbers in the national economy. § 404.1520(g)(1).

Plaintiff's objection to the R&R alleges error only in the fifth step of the analysis, where the ALJ determined that Plaintiff was capable of performing work that is available in significant numbers in the national economy. This step required the ALJ to separately consider Plaintiff's exertional and nonexertional limitations. An exertional limitation is one which affects his capability to perform a primary strength activity, such as sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 83-10, 1983 WL 31251 (1983). An individual's exertional limitations are used to identify his maximum sustained work capacity, which may be designated as sedentary, light, medium, heavy, or very heavy work, and is based on the length of time the individual can sit or stand, as well as the maximum amount of weight he can lift or carry. *Id.* A nonexertional limitation is one which affects the individual's ability to perform work activities other than primary strength activities. *Id.* Nonexertional limitations are caused by "impairments that affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." *Id.*

When an individual has only exertional limitations, or a combination of both exertional and nonexertional limitations, the ALJ first analyzes whether he may find the individual "disabled" based on exertional limitations alone. 20 C.F.R. Part 404, Subpart

P, App. 2, § 200.00(e)(2); *Walker v. Brown*, 889 F.2d 47, 49 (4th Cir. 1989) (stating that during this stage of the analysis the ALJ "considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability"). The claimant's age, education level, previous work experience and maximum sustained work capacity are used as inputs to establish which Grid Rule applies. *See* 20 C.F.R. Part 404, Subpart P, App. 2. The applicable Grid Rule then directs the ALJ's finding of whether the claimant is "disabled" or "not disabled." *See Id.* If the Grid Rules result in a determination of "disabled" the analysis ends, regardless of whether the individual also has nonexertional limitations, as the exertional limitations alone are sufficient to direct a finding of "disabled." SSR 83-14, 1983 WL 31254 (1983). If the Grid Rules result in a determination of "not disabled," and the claimant also has nonexertional limitations, the analysis continues. *Id.*

When considering nonexertional limitations, the Grid Rule, which reflects the maximum residual strength capabilities, age, education, and work experience, provides a framework for considering how the individual's nonexertional limitations further diminish his ability to work in terms of any types of jobs that would be made unavailable by those nonexertional limitations. *See* 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2). Additionally, as to nonexertional limitations, a Vocational Expert ("VE") must testify that the particular individual "retains the ability to perform specific jobs which exist in the national economy." *Grant*, 699 F.2d at 192. The purpose of the VE's testimony is to assess the degree to which the number of jobs available to someone with a

given age, education, work experience and maximum sustained work capacity is eroded by a nonexertional limitation. *See* SSR 83-14, 1983 WL 31254 (1983).

Plaintiff contends that his combination of both exertional and nonexertional limitations is controlled by Social Security Ruling 83-12, which he argues "requires the Commissioner to compare the claimant's remaining Occupational Base with that of the other Grid Rules and find the [Grid] Rule which would have the most relevancy or similarity." (Pl.'s Obj. 4.) Plaintiff contends that after the VE testifies regarding the number of jobs available to an individual with a nonexertional limitation, the ALJ should go back to the Grid Rules and then apply the rule that most closely matches the number of jobs available regardless of the individual's maximum sustained work capacity. Consequently, Plaintiff erroneously concludes that the ALJ should have used Grid Rule 202.06. True, Grid Rule 202.06 applies to individuals of Plaintiff's age, education, and work experience, but this Grid Rule applies to individuals whose maximum sustained work capacity restricts them to light work. 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00. Plaintiff represents that he can perform medium work. (Pl.'s Obj. 2.) Thus, Grid Rile 202.06 does not apply. Furthermore, Social Security Ruling 83-12 explicitly states that it is to be used "for adjudicating claims in which an individual has *only exertional limitations*." SSR 83-12, 1983 WL 31253 (1983) (emphasis added). Plaintiff has both exertional and nonexertional limitations.

Social Security Ruling 83-14, which applies to individuals who have a combination of exertional and nonexertional limitations, specifically states that "[w]here a person cannot be found disabled based on strength limitations alone, the *rule(s) which*

8

*corresponds to the person's vocational profile and maximum sustained exertional work capability* ... will be the starting point to evaluate what the person can still do functionally." SSR 83-14, 1983 WL 31254 (1983) (emphasis added). Similarly, as this Court has noted, the Act itself directs that "[i]f the strength requirements alone do not indicate that a claimant is disabled, then *the same Grid rules* apply to the individual's age, education, and work experience 'as a framework for consideration of how much the individual's nonexertional limitations further erode the occupational job base.'" *Boland v. Astrue*, 2009 WL 2431536 at *6 (E.D. Va. Aug. 7, 2009) (emphasis added) (quoting 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e)(2)). Therefore, the governing regulations make clear that the same Grid Rule applicable to an individual's exertional limitations should be used when analyzing the effect a nonexertional limitation may have on the number of jobs available to a claimant. Plaintiff's assertion to the contrary is a creative, yet losing, argument unsupported by any authority.

In this case, using Plaintiff's age, education, work experience, and medium-level maximum sustained work capacity, the ALJ referenced Grid Rule 203.07, which directed a finding of "not disabled." (R. at 27.) Because Plaintiff also has nonexertional limitations due to his impaired vision, the ALJ considered the testimony of the VE who testified that there were jobs in the national economy for an individual of Plaintiff's age, and with his level of education, work experience, and RFC. *Id.* Specifically, the VE identified three (3) jobs—housekeeper, counter supply worker, and hand packager. These positions alone, which Plaintiff is capable of performing, total 195,000 jobs nationally, and 2,250 in Virginia, where Plaintiff resides. Because significant numbers of

9

these jobs exist in the national economy, the ALJ's finding that Plaintiff is "not disabled" within the meaning of the statue is substantially justified. *See Hicks v. Califano*, 600 F.2d 1048, 1050, 1051 n.2 (4th Cir. 1979) (stating that 110 jobs in the region constituted a significant number).

Additionally, there is no authority to suggest, as Plaintiff does, that the ALJ should go back and compare the number of available jobs provided by the VE with the number of jobs that correspond to other Grid Rules. The purpose of the VE's testimony is to assess the degree to which the number of jobs available to someone with a given age, education, work experience and maximum sustained work capacity is eroded by a nonexertional limitation—not to provide a new starting point for determining which Grid Rule to apply.

Plaintiff also contends that the ALJ's reliance on the VE's testimony "fails to include any consideration or Mr. Euell's age, education, and previous work experience." (Pl. Obj. 3.) This conclusion, however, cannot be reconciled with the reality that, during the hearing, the ALJ expressly requested that, for the purposes of replying to his inquiry, the VE "assume the age, education, and work experience of the claimant." (R. at 48.) Because the ALJ's decision explicitly states that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," it is clear that the ALJ carefully considered Plaintiff's age, education, and work experience in making his determination that the Plaintiff is not disabled. (R. at 27.)

10

## IV. CONCLUSION

Because substantial evidence supports the ALJ's factual findings and those findings were reached through application of the correct legal standard, this Court will overrule Plaintiff's objections and adopt the Magistrate Judge's R&R. Accordingly, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for Summary Judgment. The final decision of the SSA will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

                                                         /s/
                                          Henry E. Hudson
                                          United States District Judge

Date: March 19, 2015
Richmond, Virginia